WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond T. Nakano, | No. cv-08-1026-PHX-ROS |
| Plaintiff, | **ORDER** |
| vs. | |
| United States of America, | |
| Defendant. | |

Before the Court are Plaintiff Raymond T. Nakano's Motion to Enjoin Proceedings (Doc. 20) and Defendant United States' Motion to Stay (Doc. 17). For the reasons stated herein, Plaintiff's Motion will be granted and Defendant's Motion will be denied.

## BACKGROUND

Plaintiff Nakano was the Chief Financial Officer of a now-dissolved Nevada corporation, National Airlines, Inc. At issue is the company's unpaid excise taxes for the tax periods ending September 30, 2000, September 30, 2001, and December 31, 2001. Under 26 U.S.C. § 6672, persons who are responsible for collecting, accounting for, and turning over to the United States taxes collected for transportation by a corporation who willfully fail to do so may be held personally liable. Often more than one is held liable for such a penalty. Such was the case here; both Plaintiff and National Airline's former Chief Executive Offer Michael Conway were assessed over $8 million.

Both Plaintiff and Conway paid a nominal amount of the assessed penalty – $38.91 and $ 41.24, respectively – and filed suit for refund of those taxes. Plaintiff filed suit in this Court; Conway, in the Eastern District of Texas. Neither person is subject to personal jurisdiction in the other's court.

Meanwhile, Defendant instituted a collection suit against both Plaintiff and Conway in the District of Nevada. Defendant moved to stay this action; Plaintiff moved to enjoin Defendant's prosecution of the Nevada action. The Eastern District of Texas has already refused to stay its proceedings and enjoined Defendant's prosecution of Conway in Nevada.

## ANALYSIS

### A. Proceeding Relating To

The Secretary of the Treasury may not begin any proceeding for collection of any unpaid tax during the pendency of a proceeding bought by the taxpayer in question "for recovery of any portion of such divisible tax which was paid by such person." 26 U.S.C. § 6331(i)(1)-(4). By its plain terms, this statute applies to the instant case, where Plaintiff has allegedly paid $38.91. However, the United States argues that this case falls under a statutory exception for "(i) any counterclaim in a proceeding under [paragraph 6331(i)(1)], or (ii) any proceeding relating to such a paragraph." 26 U.S.C. § 6331(i)(4)(A). Because the Nevada proceeding is "related" to the tax refund proceeding, Defendant argues, it therefore cannot be enjoined.

Defendant seeks to define the word "relating to" as having a "connection, relation, or reference" with. Webster's II New Riverside University Dictionary 992 (The Riverside Publishing Company 1984). This is a commonsense definition, and the Nevada proceeding, which deals with the same subject matter, is clearly "related" under such a definition. Defendant's commonsense definition is severely lacking, however, in what it would *exclude*. It is hard to imagine a collection proceeding that does not have a connection, relation, or reference to a refund proceeding for that same text. Were Defendant's position the correct one, the exception would completely swallow the rule.

1 Such an interpretation is inconsistent with basic principles of statutory construction.
2 While often the words of a statute "are sufficient in and of themselves to determine the
3 purpose of the legislation," when they lead to "to absurd or futile results," courts must look[]
4 beyond the words to the purpose of the act." United States v. Am. Trucking Ass'ns, 310 U.S.
5 534, 543 (1940). "[E]ven when the plain meaning [of the statute] did not produce absurd
6 results but merely an unreasonable one plainly at variance with the policy of the legislation
7 as a whole this Court has followed that purpose, rather than use literal words." Id. at 544.
8 Defendant's proposed definition is simply absurd.

9 Given this, the Court must look to the purpose of the statute. The congressional
10 history supports a finding that Congress intended the statute to prohibit Defendant's
11 collection action. The Senate Committee Report on the law notes that prior to its enactment
12 "the IRS [was] permitted to assess and collect tax liabilities during the pendency of a refund
13 suit relating to such tax liabilities." S. Rep. No. 105-174 (1998). The Senate Finance
14 Committee thus sought the rule change because it "believe[d] that taxpayers who are
15 litigating a refund action over divisible taxes should be protected from collection of the full
16 assessed amount, before the court considering the refund suit may ultimately determine that
17 the taxpayer is not liable." Id. Defendant's cited legislative history similarly makes rather
18 the opposite of the point it intends. For instance, the Finance Committee noted that the new
19 "provision will not affect the IRS's ability to collect *other assessments* that are *not* the
20 subject of the refund suit, to offset refunds, to counterclaim in a refund suit or related
21 proceeding, or to file a notice of Federal tax lien." Id. (emphasis added). While this is not
22 an exhaustive list of related proceedings, none are at all similar to the collection proceeding
23 that Defendant attempts to bring here. The legislative history does clearly leave the United
24 States the power to bring a counterclaim against the taxpayer in the refund suit, an action that
25 is available to the government in this case.

26 Existing case law suggests a similar conclusion. The Federal Court of Claims
27 interpreted the provision in question as meaning that "while facing a refund suit . . . , the
28 government will no longer be able to file a collection action against the refund claimant in

another court. The government [will] either have to file a counterclaim here, or wait until this proceeding ends before filing elsewhere." Rineer v. United States, 79 Fed. Cl. 765, 769 (2007). A Kentucky District Court found that "an exception that would allow the Government to bring a collection action against the plaintiffs in a properly filed tax refund suit for the same unpaid taxes at issue in the refund suit . . . would in effect render section 6331(i)(4) a nullity" and "be inconsistent with Congress's intent and contrary to the principle's [sic] of statutory interpretation." Swinford v. United States, No. CV-05-234, 2007 U.S. Dist. Lexis 9707 at *12 (W.D. Ky. Jun. 20, 2008). Finally, the Texas District Court that is hearing Conway's refund action adopted the Magistrate Judge's Report and Recommendation conclusion that the Government's refund action is prohibited and enjoined proceedings in the District Court of Nevada against Conway. Conway v. United States, No. CV-08-201, 2009 U.S. Dist. Lexis 47478 (E.D. Tex. 2009).[1]

This Court concurs. Defendant's action in Nevada is barred by statute.

## B. Anti-Injunction Act

Defendant argues that the Nevada proceeding falls within the ambit of the Anti-Injunction Act, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax is assessed." 26 U.S.C. § 7421(a). That statute is prefaced with "[e]xcept as provided in sections . . .," which is followed by a long list of statutory provisions including the above-discussed § 6331(i). Similarly, § 6331(i)(4) reads:

> Notwithstanding section 7421(a), a levy or collection proceeding prohibited by this subsection may be enjoined (during the period such prohibition is in force) by the court in which the proceeding under paragraph (1) is brought.

Defendants argue that because the Nevada action is a "proceeding related to" this proceeding it does not fall under the exception to the anti-injunction act. Because this Court rejects Defendant's interpretation of the "proceeding related to" language, it also rejects its

---

[1] This also negates any benefits of judicial economy that might accrue from staying this case and allowing the Nevada proceedings to go forward.

- 4 -

application of the anti-injunction act. It is also worth noting that a number of courts have found that district courts have the authority to enjoin collection proceedings in circumstances similar to these. See, e.g., Enax v. United States, 243 Fed. Appx. 449, 451 (11th Cir. 2007) (finding that § 6331(i)(4)(B) "grants a district court overseeing a taxpayer's claim for recovery of a portion of taxes already paid the authority to enjoin a collection proceeding on the unpaid portion of those taxes until the taxpayer's recovery suit is resolved."); Conway, 2009 U.S. Dist. Lexis 47478.

### C. Irreparable Harm

Defendant argues that this Court cannot grant an injunction barring a showing of both "irreparable injury" and "inadequacy of legal remedies." Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982). It is, as far as this Court can establish, an unsettled question of law whether the "irreparable injury" requirement applies even when a statute specifically authorizes a court to enjoin a particular proceeding and does not specify such a requirement. For instance, the Supreme Court has held that general equitable requirements hold in the patent context at least in part because "the Patent Act expressly provides that injunctions 'may' issue 'in accordance with the principles of equity.'" eBay Inc. v. Merc Exchange, L.L.C., 54 U.S. 388, 392 (2006). Section 6331(i)(4)(B) does not have such a requirement and could be read as granting the court blanket authority. Conversely, Defendant's is correct in noting that § 6331(i)(4)(B) is permissive rather than mandatory, which may imply that a District Court must police its traditional equity jurisdiction prior to granting an injunction.

However, it is not necessary to settle this question. Plaintiff has demonstrated that the equitable criteria are met. First, denying the requested relief would force Plaintiff to litigate two suits on the same issue at one time if he is to proceed with his own properly filed suit. It would also force Plaintiff to take the very risk contemplated by the Senate Finance Committee when enacting § 6331 – namely, that he may be forced to pay the full assessed

amount before this Court determines that he is not liable.[2]  Nor could any remedy at law adequately mitigate this risk.

### D. Section 6672 Suits

Finally, Defendant argues that suits to reduce § 6672 penalty assessments to judgment, like the Nevada suit, are not primarily vehicles for collection.  Section 6672, or the trust fund recovery penalty, authorizes personal liability to the United States against persons who are responsible for collecting, accounting for, and turning over to the United States taxes collected for transportation by a corporation and who willfully fail to do so.  Defendant argues that "[s]uits to reduce Section 6672 penalty assessments to judgment, like the Nevada suit here, generally are not primarily vehicles for collection."  It adds

> [i]t may well be that, in some circumstances, suits to reduce assessments to judgment may be used as collection devices – such as when liability has already been determined in the Tax Court and the suit serves solely to obtain a judgment that will secure the Government's ability to collect . . . . But a suit to reduce an assessment to judgment is also the only mechanism by which the Government can bring an action to resolve liability of individuals as responsible persons under IRC Section 6672.

Be that as it may, this suit appears to be exactly the source in which "suits to reduce assessments to judgment may be used as collection devices."  The I.R.S. has already assessed penalties against Plaintiff for tax periods ending September 30, 2000, September 30, 2001, and December 31, 2001.  It is these taxes that are, by Defendant's own description of the proceedings, "subject of the collection suit" filed in Nevada.  And the Court notes that nowhere in Defendant's several pages of discussion of this issue, does Defendant argue that *it* is not attempting to collect a tax in this instance.  It seems quite possible that a district courts may not always have cause (or even legal ability) to enjoin a Section 6672 suit because of a pre-existing refund suit.  That does not, however, mean that *this* Court cannot enjoin *this* suit.  Nor is Defendant's argument that "although producing a certificate of assessment establishes the Government's *prima facie* case, the person against whom the

---

[2] Defendant might point out that such a problem would not occur if this Court stayed its suit as Defendant requests.  However, as discussed, *infra*, no legal authority exists for such a stay given that this suit is the only proper one under federal law.

- 6 -

assessment was made then can establish that he or she is not liable for the assessment by proving that one or both elements of liability . . . is not present" persuasive. The point is not that a collection suit must necessarily succeed regardless of actual liability; it is that a taxpayer who brings a properly filed refund suit is entitled not to have another court contemporaneously adjudicate his liability.

Finally, it is worth noting that several other courts that have reached the same conclusion as this Court with regards to § 6331 were doing so in the context of § 6672 suits. See Rineer, 79 Fed. Cl. at 765 (Plaintiff filed suit "seeking the refund of money she paid to partially satisfy a trust fund recovery penalty imposed under 26 U.S.C. § 6672."); Swinford 2007 U.S. Dist. Lexis 9707 (the Government assessed "$ 60,150.99 in responsible party penalties against the Plaintiffs pursuant to 26 U.S.C. § 6672."); Conway, 2009 U.S. Dist. Lexis 47478 (facts as here).

Accordingly, Plaintiff has demonstrated his entitlement to the requested relief.

**IT IS ORDERED** Plaintiff's Motion to Enjoin Proceedings (Doc.20) is **GRANTED**.

**FURTHER ORDERED** Defendant's Motion to Stay (Doc. 17) is **DENIED**.

DATED this 21st day of July, 2009.

Roslyn O. Silver
United States District Judge